**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KOURTNEY RHOADS,** | : | |
| **Plaintiff** | : | No. 1:21-cv-01214 |
| | : | |
| **v.** | : | (Judge Kane) |
| | : | |
| **ALTHOM INC. d/b/a MAACO AUTO** | : | |
| **PAINTING, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Plaintiff Kourtney Rhoads ("Plaintiff") brings this action asserting discrimination and related claims against Althom Inc. d/b/a MAACO Auto Painting ("Althom") and its president, Alan Bailey, vice president, Donna Bailey (together, the "Baileys"), and general manager, Shawn Moul (collectively, "Defendants"). (Doc. No. 1.) Before the Court is Defendants' motion to dismiss this action for Plaintiff's failure to timely effectuate service of process and, alternatively, for failure to state a claim upon which relief can be granted. (Doc. No. 15.) For the following reasons, the Court will grant in part and deny in part the motion.

**I.    BACKGROUND[1]**

The allegations of Plaintiff's complaint, which the Court must accept as true in evaluating Defendants' motion to dismiss, see supra n.1, establish the following timeline of events. Althom hired Plaintiff as a painter in April 2019. (Doc. No. 1 ¶ 13.) She was and remained Althom's only female employee during her employment. (Id. ¶ 14.) At her hiring, Plaintiff, who suffers

---

[1] This background is drawn from the allegations in Plaintiff's complaint, which the Court has accepted as true. See Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004). In ruling on a 12(b)(6) motion to dismiss, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

from anxiety and PTSD (id. at 2), "advised Defendants that [she] was treating her disabilities with a doctor" (id. ¶ 15).  She "scheduled the majority of her treatments for her disabilities outside her work hours for Defendants, and when she could not, she sought and received permission in advance from Defendants."  (Id. ¶ 16.)

The wrongful conduct alleged in Plaintiff's complaint occurred in August 2019, culminating with her termination from Althom on or about August 23rd.  (Id. ¶¶ 17-43.)  She alleges that on August 8, 2019, Althom manager Tod Clark ("Clark") told her, "'[y]ou can do the Dodge then later you can do me,' in response to Plaintiff's question about a painting assignment of an automobile," and also touched "Plaintiff's legs and [] vagina."  (Id. ¶¶ 17-18.)  Plaintiff "rebuffed [] Clark's unwanted sexual advances and unwanted touching; she told him to stop and pushed him."  (Id. ¶ 19.)  Plaintiff immediately contacted Defendant Moul, Althom's general manager, and left him a "message saying that she needed to talk to [him] as soon as possible."  (Id. ¶ 20.)  Moul did not respond.  (Id. ¶ 21.)

The next day, August 9th, in a text message, Clark "sent Plaintiff a picture of his penis with the words, '[d]o you want it.'"  (Id. ¶ 22.)  Plaintiff allegedly reported Clark's conduct to another manager, Tony Pratt ("Pratt"), and later spoke to Moul about the "continued sexual harassment of her."  (Id. ¶¶ 23-25.)  Plaintiff requested that Moul, if he did not fire Clark, "at least not schedule Plaintiff and [] Clark to work together," and Moul assured Plaintiff that he would speak with Clark.  (Id. ¶¶ 26-27.)  Plaintiff was not scheduled to work August 10th and 11th and called out of work on August 12th because "Moul had not yet contacted [her] to update her on her request . . . and due to the anxiety [she] was experiencing about same[.]"  (Id. ¶ 29.)  On August 13th, "Plaintiff was not scheduled to work due a doctor's appointment, for which Plaintiff had sought and obtained prior permission from Defendant."  (Id. ¶ 30.)

2

When Plaintiff returned to work on August 14th, "to [her] surprise, [] Clark was at Defendants' facility." (Id. ¶ 31.) Plaintiff allegedly "waited to speak with [] Moul for over two hours, but [] Moul did not show." (Id. ¶ 32.) Plaintiff avers that she "then sought and obtained permission from [] Pratt to leave work, reporting that she was experiencing extreme anxiety due to [] Clark's presence, despite the serious nature of her sexual harassment and sexual assault complaint against [] Clark." (Id. ¶ 33.) Plaintiff called out of work on August 15th because her "minor child was diagnosed with renal failure and admitted to the hospital" for about two weeks. (Doc. No. ¶¶ 34-35.) Plaintiff notified Pratt "of her need for leave due to same[.]" (Id. ¶ 36.)

While still on leave, on August 23rd, Plaintiff again reached out to Moul, inquiring whether Moul fired or planned to fire Clark. (Id. ¶ 37.) Moul did not respond. (Id. ¶ 38.) Plaintiff alleges that she then reached out to another manager asking why "Moul was ignoring her." (Id. ¶ 39.) That manager "told Plaintiff that Defendant Moul believed Plaintiff had quit." (Id. ¶ 40.) Plaintiff confronted Moul—"reminding him that she was on a leave of absence due to the hospitalization of her minor child"—and complained about Defendants' failure to take "corrective steps" despite "the serious nature of her sexual harassment and sexual assault complaint against [] Clark." (Id. ¶¶ 41-42.) Moul, in response, "directed Plaintiff to pick up her last paycheck." (Id. ¶ 43.)

About nine (9) months later, in May 2020, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which dual-filed the charge with the Pennsylvania Human Relations Commission ("PHRC"). (Doc. No. 24-2 at 21.)[2] The charge

---

[2] A copy of Plaintiff's EEOC file is attached as an exhibit to her brief in opposition to Defendants' motion. Although Plaintiff did not attach those documents to her complaint, the Court will consider them insofar as they are integral to her claim, "undisputedly authentic," relied upon by both Plaintiff and Defendants in support of their respective arguments, and consist, at least in part, of matters of public record. See Ruddy v. U.S. Postal Serv., 455 F.

asserted the same claims that form the basis of this action.  (Id. at 13, 45-46.)  Declining to investigate the charge any further, the EEOC closed its file on April 12, 2021, and provided Plaintiff with notice of her right to pursue a federal or state claim within ninety (90) days of her receipt of the notice.  (Id. at 7.)

Plaintiff commenced this action on July 9, 2021, with the filing of a fourteen (14) count complaint, asserting five (5) federal claims against Althom under Title VII of the Civil Rights Act of 1964 ("Title VII") (Counts I-III), 42 U.S.C. § 2000e, and the Americans with Disabilities Act of 1990 ("ADA") (Counts IV-V), 42 U.S.C. § 12101 et seq., as well as eight (9) state law causes of action: (1) intentional infliction of emotional distress ("IIED") claim against Althom and Moul (Count VI); (2) IIED claim against Althom based on a respondeat superior theory of liability (Count VII); (3) negligent supervision claim against Althom and Moul (Count VIII); (4) assault and battery claims against Althom based on a respondeat superior theory of liability (Count IX); (5) negligent infliction of emotional distress ("NIED") claim against Althom and Moul (Count X); and (6) PHRA claims against all Defendants based on allegations of sexual harassment, hostile work environment, retaliation, constructive discharge, and disability discrimination/disability association discrimination (Counts XI-XIV).  (Doc. No. 1 ¶¶ 45-118.) The Clerk of Court issued summonses on July 12, 2021.  (Doc. No. 2.)

In September 2021, Plaintiff filed affidavits of service in which process server Michelle Guyton ("Guyton") attested to having personally served copies of the summons and complaint at

---

App'x 279, 283 (3d Cir. 2011) (unpublished) (approving district court's consideration, on a motion to dismiss, of plaintiff's EEOC file based, in part, on the fact that the EEOC file was "integral to [the plaintiff's claim]," noting that courts may consider "undisputedly authentic" documents on a motion to dismiss); see also McCain v. Indep. Chrysler-Plymouth Inc., No. 02-cv-00863, 2002 WL 1835650, at *1 (E.D. Pa. Aug. 7, 2002) (collecting cases and considering EEOC-related documents in granting motion to dismiss); Rogan v. Giant Eagle, Inc., 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000) (same).

Althom's place of business by delivering them to Rod Moore ("Moore")—an "Inspector-Detailer" who represented that he was authorized to accept service for Defendants in their absence—on September 16, 2021.  (Doc. No. 4.)  Because Defendants did not appear or defend in this action, the Clerk of Court, at Plaintiff's request, entered default as to all four Defendants.  (Doc. Nos. 5-7.)  In April 2022, Plaintiff filed a motion for entry of default judgment and a brief in support of the motion.  (Doc. Nos. 8-9.)  The Court denied the motion on June 21, 2022, as Plaintiff had failed to establish that she effectuated service of process upon Defendants in accordance with Federal Rule of Civil Procedure 4.  (Doc. No. 10 at 4.)  The Court found, inter alia, that the record as it stood fell short of demonstrating that Moore, Althom's "Inspector-Detailer," was authorized to accept service on behalf of Defendants.  (Id. at 2-4.)  Plaintiff did not file any submissions or otherwise contact the Court between June and September 2022.

In September 2022, the Court directed Plaintiff to show cause why this action should not be dismissed without prejudice pursuant to Federal Rule of Procedure 4(m) (requiring that "the court . . . dismiss [an] action without prejudice or order that service be made within a specified time" if a "defendant is not served within 90 days after the complaint is filed").  (Doc. No. 11.)  Plaintiff responded, asserting that Guyton's September 16, 2021 personal service of copies of the summons and complaint—about sixty-nine (69) days after she had filed the complaint—satisfied the requirements of Rule 4(m).  (Doc. No. 12.)  With her response, Plaintiff provided a declaration by Guyton in which the latter attested to the following: (1) she is a process server of twenty (20) years and the owner of a process service business in Carlisle, Pennsylvania; (2) she served the summons and complaint at Althom's place of business on September 16, 2021; (3) the individual who accepted service identified himself as Rod Moore, verified that neither Moul nor the Baileys were on site, stated that he was the person in charge in their absence, and confirmed

that he was authorized to accept service of the summons and complaint in their absence;
(4) Althom does not have a registered agent; and (5) she personally handed Moore the summons
and complaint.  (Doc. No. 12-2.)  Plaintiff asked the Court to either deem service timely or find
good cause to extend the time effectuate service of process by ninety (90) days.  (Doc. No. 12.)

Based on her response to the show-cause order, the Court granted Plaintiff leave to file a
renewed motion for entry of default judgment.  (Doc. No. 13.)  In the interim, however, on
November 11, 2022, Defendants filed their pending motion to dismiss, followed by a supporting
brief, which Defendants filed late with consent of counsel and leave of the Court.  (Doc. Nos. 15,
17-20.)  After obtaining an extension of time to do so, Plaintiff filed a brief in opposition to the
motion, providing affidavits of service indicating that Guyton personally served Moul—on
October 3, 2022, at Althom's place of business—with copies of the summons and complaint.
(Doc. Nos. 21-24.)  The affidavits identify Moul as "General Manager-Principal for Althom."
(Doc. No. 21 at 1-4.)  Defendants then sought—and the Court granted—leave to file an
overlength reply brief, which Defendants filed on December 28, 2022.  (Doc. Nos. 25-27.)
Having been fully briefed, Defendants' motion is ripe for disposition.

## II.     MOTION TO DISMISS FOR IMPROPER SERVICE OF PROCESS

Defendants first move for dismissal of this action pursuant to Federal Rule of Civil
Procedure 12(b)(5) (insufficient service of process),[3] arguing that Plaintiff failed to effectuate
proper service of process within ninety (90) days of her filing of the complaint under Federal

---

[3] The Court notes that Defendants' opening brief makes passing reference to Rule 12(b)(4) (Doc.
No. 20 at 2), which permits the "fairly rare" defense "concern[ing] the form of the process rather
than the manner or method of its service[.]"  See 5B Charles Alan Wright & Arthur R. Miller,
Federal Practice and Procedure § 1353 (3d ed. 2004).  Because Defendants' Rule 4 motion
challenges the "manner or method of [] service," see id., Defendants are necessarily moving to
dismiss under Rule 12(b)(5).

Rule of Civil Procedure 4(m) (time limit for service).  (Doc. No. 15 at 1.)  Under Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed," the Court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  See Fed. R. Civ. P. 4(m).  If, however, "the plaintiff shows good cause for the failure," "the court must extend the time for service for an appropriate period."  See id. (emphasis added).

Defendants argue that Plaintiff's only attempt to serve process upon them within ninety (90) days of the complaint's filing—i.e., Guyton's September 16, 2021 personal service of copies of the summons and complaint upon Moore—was not in accordance with Rule 4(e) and (h).  (Doc. No. 20 at 4-9.)  Rule 4(e) provides that individuals within the United States may be served: (1) "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made"; (2) by "delivering a copy of the summons and of the complaint to the individual personally"; (3) by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"; or (4) "delivering a copy of each to an agent authorized by appointment or by law to receive service of process."  See Fed. R. Civ. P. 4(e)(1)-(2).  Rule 4(h), in turn, provides that corporations within the United States may be served: (1) "in the manner prescribed by Rule 4(e)(1) for serving an individual"; or (2) by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[.]"  See Fed. R. Civ. P. 4(h)(1)(A)-(B).

In arguing that Plaintiff failed to timely serve them by an approved method of service, Defendants challenge the veracity of Guyton's September 2021 affidavits of service and later-filed declaration.  (Doc. No. 20 at 7-8.)  Defendants essentially argue that Guyton lied in those

documents.  (Id. at 4.)  They base this argument on a declaration by Moore in which he states that he: (1) "did not accept service of the complaint and summons"; (2) "was not in charge of the business in the absence of Shawn Moul, Donna Bailey, or Alan Bailey"; (3) was "never []  authorized to accept service of process on behalf of [Defendants]"; (4) "never informed anyone, including [] Guyton, that [he] was authorized to accept service of process on behalf of [Defendants]"; and (5) "was not handed a copy of a complaint or summons by [] Guyton . . . ." (Doc. No. 20-1 at 2.)

In response, Plaintiff relies on Guyton's affidavits of service and, more specifically, Guyton's declaration attesting to Moore's representation that he was, in fact, authorized to accept service on behalf of all Defendants.  (Doc. No. 24 at 9-13.)  Plaintiff further asserts, in the alternative, that even assuming Guyton failed to properly serve process in September 2021, the Court should find good cause to extend the time to serve process under Rule 4(m) and deem timely (nunc pro tunc, necessarily) Guyton's October 3, 2022 personal service of copies of the summons and complaint upon Moul at Althom on behalf of all Defendants.  (Id. at 13-15.)

Having considered the parties' contentions and their respective exhibits, the Court finds it unnecessary to address Defendants' argument that Plaintiff failed to serve them with proper service of process within ninety (90) days of her filing of the complaint because, even assuming Guyton's service of copies of the summons and complaint upon Moore in September 2021 was somehow deficient, Plaintiff has established good cause for belatedly serving Defendants under Rule 4(m).  "Courts consider 'three factors in determining the existence of good cause under Rule 4(m): (1) reasonableness of plaintiff's efforts to serve[;] (2) prejudice to the defendant by lack of timely service[;] and (3) whether plaintiff moved for an enlargement of time to serve.'" See Beautyman v. Laurent, 829 F. App'x 581, 583 (3d Cir. 2020) (unpublished) (quoting MCI

Telecomms. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir. 1995)).  The prejudice to a defendant "may tip the 'good cause' scale," but the "primary focus is on the plaintiff's reasons for not complying with the time limit in the first place."  See MCI Telecomms. Corp., 71 F.3d at 1097.

Given the documented, legitimate efforts by Plaintiff to timely effectuate service, the Court has no hesitation in finding good cause to extend the time to effectuate service of process under Rule 4(m).  Defendants argue that Guyton never actually handed Moore copies of the summons and complaint, but Moore's declaration, upon which Defendants heavily rely, is, at best, dubious.  Accepting the assertions in Moore's declaration as true would require the Court to conclude that Guyton never handed Moore copies of the summons and complaint in September 2021 but was nevertheless able to accurately describe Moore's position at Althom.  Moore's own description of his duties at Althom, i.e., inspecting "vehicles that had been painted, reassembled components that had been removed during painting, and washed vehicles" (Doc. No. 20-1), is consistent with Guyton's description of Moore as an "Inspector-Detailer-Authorized to Accept." (Doc. No. 4).  Notably, Defendants offer no other explanation for Guyton's knowledge of Moore's position and duties (Doc. Nos. 20, 27), and, further, as Plaintiff notes (Doc. No. 24 at 11), there is absolutely no basis in the record to conclude that Guyton, a disinterested process server with years of experience, had any reason to place her career in jeopardy by falsely attesting to facts regarding service.

The record, in short, leads the Court to conclude that Plaintiff has demonstrated her good-faith reliance on Guyton's attestations in concluding that Moore accepted service on behalf of

Defendants, who authorized him to do so.  Whatever prejudice Defendants assert,[4] on this record, is insufficient to "tip the 'good cause' scale" in their favor, see MCI Telecomms. Corp., 71 F.3d at 1097, particularly given that the record seems to suggest that Defendants—by attempting to discredit Guyton's otherwise credible averments—may have "evad[ed] service or conceal[ed] a defect in attempted service," see Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1305-06 (3d Cir. 1995) (quoting advisory committee's note to 1993 amendment).  Accordingly, even assuming Plaintiff failed to timely effectuate service of process under Rule 4(m), the Court finds good cause to extend the time for service nunc pro tunc, accepts Guyton's unchallenged affidavits of service indicating that she served Moul, Althom's general manager, with copies of the summons and complaint on October 3, 2022, and deems such service timely.  Having so found, the Court turns to Defendants' motion to dismiss Plaintiff's federal and state claims for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6).

## III.   RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  When reviewing the sufficiency of a complaint pursuant to a motion to

---

[4] Although Defendants' reply makes no mention of the good-cause argument and instead challenges Plaintiff's complaint on the merits (Doc. No. 27), Defendants advance prejudice-based arguments in their brief in support of their motion (Doc. No. 20).  Specifically, they note that more than three (3) years have elapsed since "Plaintiff's separation of employment," that text messages referenced in the complaint would be "difficult, if not impossible, to recover if they have been deleted and time has passed," and that, other than Defendant Moul, all employees referenced in the complaint no longer work at Althom.  (Doc. No. 20 at 9.)  To the extent these circumstances are relevant to the issue of prejudice—and observing that Plaintiff preserved a copy of Clark's August 9, 2019 text message (Doc. No. 24 at 15) and that Defendants had notice of the allegations underlying Plaintiff's claims no later than May 2020, when she filed the EEOC charge—the Court finds that Plaintiff's good-faith efforts to serve process strongly counsel in favor of finding good cause to extend the time to serve process nunc pro tunc.

dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court need not accept legal conclusions proffered as factual allegations. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Consistent with the Supreme Court's rulings in Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified three steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 664). A complaint is properly dismissed where the factual content in the complaint does not allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Iqbal, 556 U.S. at 678.

## A.    Plaintiff's Federal Claims

Defendants narrowly challenge Plaintiff's Title VII and ADA claims (Counts I to V) on two grounds, both procedural and both unavailing. First, they argue that Plaintiff has failed to allege that she exhausted her administrative remedies by filing a charge of discrimination with the EEOC before commencing this action. (Doc. No. 20 at 11-13.) In this context, to pursue a

federal discrimination claim under either Title VII or the ADA, an employee must first "file a 'charge' with the EEOC within 300 days of the alleged unlawful employment practice, or within 30 days after receiving notice that the analogous state agency has terminated proceedings, whichever is earlier."  See Williams v. Pa. Hum. Rels. Comm'n, 870 F.3d 294, 298 & nn. 16-17 (3d Cir. 2017) (citing 42 U.S.C. §§ 2000e-5(e)(1), 12117(a)).  Here, Plaintiff's EEOC record reflects that she filed a discrimination charge with the EEOC in May 2020 relating to the conduct alleged in her complaint.  (Doc. No. 24-2 at 13.)  Accordingly, the Court rejects Defendants' argument that Plaintiff failed to exhaust her EEOC administrative remedies.

Second, Defendants argue that Plaintiff has failed to plausibly allege that Althom is an "employer" for purposes of Title VII and the ADA.  (Doc. No. 20 at 10-11.)  Under both statutes, an employer is defined, in relevant part, as a corporation "with fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year[.]"  See 42 U.S.C. § 2000e(b); see id. § 12111(5).  In this case, Plaintiff alleges that, "[a]t all times relevant herein," Althom was and continued to be an 'employer'" within the meaning of both Title VII and the ADA (Doc. No. 1 ¶¶ 46, 61), and her EEOC record includes a document (entitled "EMPLOYMENT INFO") indicating that Althom had eighteen (18) employees "from January 1, 2019," to early 2021 (Doc. No. 24-2 at 33-34).  Based on Plaintiff's allegations and her EEOC record, the Court concludes that Plaintiff has established, prima facie, the fifteen (15) employee requirement of Title VII/ADA.  Accordingly, because the only two arguments raised by Defendants concerning Plaintiff's Title VII/ADA claims lack merit, the Court will deny Defendants' motion to dismiss Counts I through V.

## B.     Plaintiff's State Law Claims

As the Court noted, supra, Plaintiff asserts nine (9) state law claims, to wit: an IIED claim

against Althom and Moul (Count VI); an IIED respondeat superior claim against Althom (Count VII); a negligent supervision claim against Althom and Moul (Count VIII); assault and battery respondeat superior claims against Althom (Count IX); an NIED claim against Althom and Moul (Count X); and four (4) PHRA claims against all Defendants (Counts XI-XIV). Although Defendants assert that they seek dismissal of the complaint in its entirety (Doc. No. 27 at 12), Defendants neither address nor seek dismissal of Count X of Plaintiff's complaint, which asserts an NIED claim against Althom and Moul (Doc. Nos. 20, 27). The Court turns to the state law claims of which Defendants specifically seek dismissal, i.e., Counts VI-IX and XI-XIV).

### 1.     IIED Claims Against Althom & Moul (Count VI)

Count VI of Plaintiff's complaint asserts an IIED claim against Althom and Moul. (Doc. No. 1 ¶¶ 75-78.) To state an IIED claim against Althom and Moul, Plaintiff must plausibly allege that that they intentionally or recklessly engaged in extreme and outrageous conduct that caused severe emotional distress. See Jordan v. Pa. State Univ., 276 A.3d 751, 775 (Pa. Super. 2022). She must allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." See Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998) (quoting Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa. Super. 1987)). "The question whether conduct meets the standard of outrageousness necessary to state a claim for intentional infliction is a question of law." Borton v. Unisys Corp., 1991 WL 915, at *6 (E.D. Pa. Jan. 4, 1991) (citing Andrews v. City of Phila., 895 F.2d 1469, 1487 (3d Cir. 1990), superseded in part by statute, Pub. L. No. 102-166, 105 Stat. 1072)).

Relying on this Court's decision in Harper v. Misitano, No. 1:15-cv-02205, 2016 WL 4429941 (M.D. Pa. Aug. 22, 2016), Defendants argue that Plaintiff has failed to plausibly allege that either her former employer (Althom) or general manager (Moul) engaged in outrageous and

extreme conduct.  In Harper, this Court noted that the conduct underlying the IIED claim in Hoy (a seminal IIED Pennsylvania case), while "highly offensive and unacceptable," did not rise to the level of "extremely outrageous" that "would allow for recovery under this most limited of torts."  See id. at *3 (quoting Hoy, 720 A.2d at 754); (Doc. No. 20 at 13).  Harper had asserted Title VII claims against both her employer and the company for which she worked, alleging that her supervisor harassed her by "hugging, touching, smelling, using suggestive language, and attempting to hand-feed [her]" over the course of about fourteen (14) months.  See Harper, 2016 WL 4429941, at *1.  Harper more specifically alleged that the supervisor "repeatedly hugged her and refused to let her go," "repeatedly touched [her] hair, neck, shoulders, stomach and thighs," required her to "stand and kneel in front of him while he would comment, smell, and touch [her]," put her in headlocks and twisted her arm, repeatedly asked her to kiss him on the cheek and tell him she loved him, sent her a sexually explicit email and video, threatened to demote her for complaining about his conduct, and terminated and rehired her within the same day.[5]  The Court granted the defendants' motion to dismiss Harper's IIED claim concluding that the conduct she alleged did not rise to the level of "outrageousness" necessary to support an IIED claim under Pennsylvania law.  See Harper, 2016 WL 4429941, at *3.

Based on Harper, Defendants argue that Plaintiff's IIED claim fails because she does not allege that her employer "engaged in both outrageous sexual harassment and retaliation for turning down sexual propositions."  (Doc. No. 20 at 13.)  Defendants note that Plaintiff does not allege that "Clark retaliated against her for rejecting his advances," engaged in "quid pro quo sexual harassment," or "retaliate[ed] [against Plaintiff] for turning down sexual advances."  (Id.

---

[5]  The Court's decision did not recite all of these allegations, which were contained in Plaintiff's initial complaint.  See Harper v. Anthony Mistano et al., No. 15-cv-02205 (M.D. Pa. filed Nov. 18, 2015), ECF No. 1 ¶¶ 12-13, 16, 22-24, 26, 29-31.

at 13-14.)  Defendants further note that Plaintiff's allegations concerning Clark's improper conduct concerned "two occasions between August 8-9, 2019."  (Id. at 13.)  In their estimation, "[a]t best, Plaintiff claims that Moul in some way retaliated against her through his indifference toward her reports of sexual harassment by Clark."  (Id. at 14.)

Plaintiff, in response, argues that retaliation is not a necessary element of her IIED claim, and that, even if it is a required element, she has adequately alleged retaliatory conduct.  (Doc. No. 24 at 18-22.)  She first observes that under Pennsylvania law, retaliation is a "weighty" but not "mandated factor" in an IIED claim, "allow[ing] for the rare case in which a victim of sexual harassment is subjected to blatantly abhorrent conduct, but in which no retaliatory action is taken."  (Id. at 19-20) (quoting Hoy, 720 A.2d at 754).  Plaintiff asserts that her allegations of having been sexually assaulted—"without consent, in the same breath as her supervisor told her that her job duties included having sex with him"—give rise to an IIED claim, particularly given "Defendants['] refusal to even listen to [her] complaint" or "protect her from her assailant[.]" (Id. at 20.)

Plaintiff next asserts that she did, in fact, plead retaliation, maintaining that "Defendants terminated her because she complained about being sexually assaulted."  (Id. at 18.)  She elaborates as follows:

> Plaintiff alleges that Moul's failure to respond to her complaints of sexual assault and harassment, failure to provide any plan to stop such sexual assault and harassment from continuing, and averments that he considered Plaintiff to have quit when she had actually asked for time off to take care of her son, all constitutes, at minimum, a constructive termination, and that the reason for that constructive termination was motivated, at least in part, by a desire to retaliate against Plaintiff for complaining about the assault and harassment. . . .
>
> Accordingly, even if retaliation was a necessary element of a sexual harassment based IIED claim, here, Plaintiff has pleaded she was retaliated against.

(Id. at 18-19) (citation to record omitted).

Upon careful consideration of the parties' contentions and the allegations of Plaintiff's complaint, the Court is constrained to agree with Defendants that Plaintiff has failed to plausibly allege an IIED claim under Pennsylvania law.  Clark's behavior, assuming the truth of Plaintiff's allegations, was intentional, malicious, and likely criminal.  An IIED claim, however, requires more.  IIED claims are "reserved by the courts for only the most clearly desperate and ultra extreme conduct," and it is not enough that a defendant's conduct is intentional, malicious, criminal, or "of a degree of aggravation that would entitle the plaintiff to punitive damages for another tort."  See Hoy, 720 A.2d at 754 (quoting Restatement (Second) of Torts § 46, cmt. d).

As the United States Court of Appeals for the Third Circuit has noted, it is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for IIED," see Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988), and numerous courts have dismissed employment-related IIED claims even where, as here, the allegations involved unwanted physical contact, see, e.g., Rorrer v. Cleveland Steel Container, 712 F. Supp. 2d 422, 428 (E.D. Pa. 2010) (finding no IIED claim established where employee allegedly stared at plaintiff's breasts and "held a utility knife with a protruding blade to her breast"); Lapenta v. City of Phila., No. 03-cv-00518, 2004 WL 1656607, at *1 (E.D. Pa. July 23, 2004) (finding no IIED claim established where supervisor told the plaintiff "he wanted to kiss her and her genitalia; that he wished to make love to her; during working hours made lewd comments about her appearance and sexuality; grabbed, kissed, and touched her legs; informed her that he had a gift for her and subsequently gave her a condom;

and, chased her around their working area attempting to kiss her");[6] Borton, 1991 WL 915, at *1 (dismissing IIED claim where employee allegedly "cupped his hands over [the plaintiff's] breasts without her consent"); Hoy, 720 A.2d at 754 (finding workplace harassment involving sexual propositions, physical contact (grabbing the back of the plaintiff's knee), frequent profanity, and "posting of a sexually suggestive picture" not sufficiently outrageous to support an IIED claim).[7]

As to Plaintiff's assertion that she has alleged both outrageous conduct and retaliation, she does not allege (or argue in her brief) that Clark retaliated against her, and the "type of retaliation that has [typically] been required" to state an employment-related IIED claim is "retaliation for turning down sexual propositions." See Hitchens v. Cnty. of Montgomery, No. 01-cv-02564, 2004 WL 7342587, at *1 (E.D. Pa. Mar. 16, 2004); see also Andrews, 895 F.2d at 1487 (same). Plaintiff does allege that Moul failed to immediately respond to her complaints, that Moul failed to fire Clark or schedule him to work on a different day than her, and that Althom terminated her as a result of her complaints—but these allegations do not serve to establish a prima facie IIED claim under these circumstances, particularly given the absence of

---

[6] Rorrer and Lapenta were decided on summary judgment motions. The Court cites to them only to the extent they assist in making the legal determination whether conduct is sufficiently outrageous to support an IIED claim.

[7] An oft-cited example of the kind of outrageous conduct that courts have found sufficient to support an IIED claim in the employment context is Merritt v. Del. River Port Auth., No. 98-cv-03313, 1999 WL 285900, at *8 (E.D. Pa. Apr. 20, 1999), which involved an employee who "repeatedly exposed himself to [the plaintiff], touched [her] genitals on many occasions, and engaged in masturbation while calling out [her] name." Another example is Hare v. H&R Indus., Inc., 67 F. App'x 114, 117 (3d Cir. 2003) (unpublished), which involved an alleged retaliatory termination following the plaintiff's numerous complaints about various employees who engaged in persistent, degrading, abhorrent behavior including "pinch[ing]" and "grab[bing] her buttocks," touching her, and tickling her while she worked on a machine, "one time causing her to almost cut off her finger." Her employer and general manager permitted the behavior to continue and also engaged in the same conduct and even encouraged it. See id. at 119, 121. That level of retaliation is not evident from Plaintiff's allegations here, see supra & infra.

any allegations that Clark himself retaliated against Plaintiff in any way.  Cf. Harris v. Midas, No. 17-cv-00095, 2017 WL 3440693, at *4 (W.D. Pa. Aug. 10, 2017) (finding IIED claim sufficiently pleaded where the plaintiff alleged that, when she reported inappropriate conduct about a store manager, the store manager "reminded her of his military status, threatened to punch her in the nose, implied that he would rape her (stating that, if he wanted to sleep with her, he would 'get her drunk' and she would 'spread her legs'), and then pushed her into a chair, pulling her shirt away from her body, and looked at her breasts"); McGovern v. Jack D's, Inc., No. 03-cv-05547, 2004 WL 632703, at *3 (E.D. Pa. Feb. 25, 2004) (stating that "[t]he case law only supports a claim of intentional infliction of emotional distress where the employer participated in the sexual harassment and then retaliated against the employee for rejecting the employer's sexual advances").

In sum, even construing the allegations of Plaintiff's complaint in a light most favorable to her, Plaintiff has "fail[ed] to allege 'the most clearly desperate and ultra extreme conduct' required to support an IIED claim under Pennsylvania law."  See Connearney v. Main Line Hosps., Inc., No. 15-cv-02730, 2015 WL 9302912, at *8 (E.D. Pa. Dec. 22, 2015) (quoting Hoy, 720 A.2d at 754).  Accordingly, the Court will grant Defendants' motion to dismiss Count VI of Plaintiff's complaint.

**2.      IIED Claim Against Althom: Respondeat Superior Theory of Liability (Count VII)**

Because Plaintiff has failed to plausibly allege conduct that can give rise to an IIED claim, her vicarious liability IIED claim against Althom necessarily fails.  The Court will therefore grant Defendants' motion to dismiss Count VII of Plaintiff's complaint.

**3.      Negligent Supervision Claim Against Althom & Moul (Count VIII)**

Count VIII of Plaintiff's complaint asserts a negligent supervision claim against Althom

and Moul.  (Doc. No. 1 at 11-12.)  Defendants argue that the Court must dismiss Count VIII

under the well-established rule that "the availability of a PHRA remedy precludes other common

law remedies," even if "the statute is not invoked."  See Wolk v. Saks Fifth Ave. Inc., 728 F.2d

221, 223 n.3 (3d Cir. 1984); see also Mazuka v. Amazon.com, 730 F. App'x 117, 120 (3d Cir.

2018) (unpublished) (holding that the PHRA preempted a cause of action that the plaintiff

"cast[ed] as a fraudulent misrepresentation claim" but based on allegations of discrimination

based on his disability); (Doc. No. 20 at 14).  This rule is embodied in the PHRA itself, which

"provides the 'exclusive' procedure for complaining of acts it declares as unlawful" and states

that "the final determination therein shall exclude any other action, civil or criminal, based on the

same grievance of the complainant concerned."  See Bosley v. Rawden Joint Ventures Corp.,

No. 21-cv-04616, 2022 WL 2752111, at *2 (E.D. Pa. July 14, 2022) (quoting 42 P.S. § 962(b)).

        In response, Plaintiff relies on Keck v. Com. Union Ins. Co., 758 F. Supp. 1034 (M.D.

Pa. 1991); (Doc. No. 24 at 22), for the following proposition: "if all or part of the facts that

would give rise to a discrimination claim would also independently support a common law

claim, the common law claim is not preempted by the PHRA and need not be adjudicated within

its framework," see Keck, 758 F. Supp. at 1039.  Based on Keck, Plaintiff asserts that "the act

which Defendants failed to prevent is not simply harassment and assault; it includes a physical

battery and common-law assault, i.e., Plaintiff's fear of unwanted physical contact."  (Doc. No.

24 at 22.)  Plaintiff maintains that her assault and battery claims "are based not her [sic] status as

a woman in the workplace, but rather on her individual right of bodily integrity which Plaintiff's

assailant violated," and that the assault/battery claims are "factually and legally independent

from whether Defendants discriminated against women by permitting sexual assault, sexual

harassment, and a sexually hostile work[]environment."  (Id. at 22-23.)

Having considered the parties' contentions, the Court concludes that Plaintiff "clearly invoked the PHRA by explicitly pleading it in her complaint" and, as a result, is preempted from "simultaneously plead[ing] [a state law negligent supervision] action arising out of the same conduct." See Randler v. Kountry Kraft, Inc., No. 1:11-cv-00474, 2011 WL 5040787, at *3 (M.D. Pa. Oct. 24, 2011).  In this regard, as courts have noted, the "majority of case law supports preemption of common tort law claims if they arise from the same facts as claims brought under the PHRA." See Bosley, 2022 WL 2752111, at *3 (emphasis added).  Applying that majority view here precludes Plaintiff from avoiding PHRA preemption by asserting different theories of liability (failing to protect workers generally from an assault and battery, and permitting sexual assault and harassment on the basis of sex) based on the same set of facts.  See Watkins v. Rite Aid Corp., No. 4:06-cv-00299, 2006 WL 2085992, at *4 (M.D. Pa. July 25, 2006) (collecting cases and stating that "[t]he PHRA preempts common law negligent supervision claims against employers when . . . such claims arise from, and form an integral part of, the PHRA-prohibited discriminatory conduct").[8]

Plaintiff's reliance on Keck is unavailing for two reasons.  First, the case is factually and legally distinguishable.  Keck involved breach of contract claim, and that claim, according to the court, was preempted by the PHRA.  See Keck, 758 F. Supp. at 1039.  In concluding that PHRA preemption applied, the court noted that the plaintiff did not allege a "separate set of facts that support[ed] either the existence of a contract or a breach thereof that [wa]s outside of the act of discrimination."  Id.  Keck simply did not address the issue raised by Defendants' motion here,

---

[8]  In asserting a negligent supervision claim against Defendants, Plaintiff alleges, in pertinent part, that "Defendant[s] Althom and [] Moul failed to exercise ordinary care in preventing [] Clark's intentional harassment and sexual assault against Plaintiff," and, further, that Clark's "intentional harassment and retaliation against Plaintiff occurred on Defendants' premises and could have been prevented with better supervision and policies."  (Doc. No. 1 ¶¶ 85, 87.)

i.e., the extent to which the PHRA preempts negligent supervision claims that arise out of the same conduct that forms the basis of simultaneously pleaded PHRA claims.

Second, Keck appears to be at odds with the majority of cases "firmly establish[ing] that negligent supervision claims arising out of [Pennsylvania-based] discrimination cases" must be "brought under the [PHRA]." See Bosley, 2022 WL 2752111, at *2 (quoting Randler v. Kountry Kraft Kitchens, No. 1:11-cv-00474, 2012 WL 6561510, at *14 (M.D. Pa. Dec. 17, 2012)).  The Court agrees with this majority view and concludes, here, that "the PHRA preempts Plaintiff's negligent supervision claim because her allegations of negligent supervision are woven from the same fabric as her statutory discrimination, retaliation, and hostile work environment claims." See Newman v. Point Park Univ., No. 2:20-cv-00204, 2022 WL 969601, at *2 (W.D. Pa. Mar. 31, 2022); see also Roadman v. Select Specialty Hosp., No. 3:16-cv-00246, 2020 WL 571058, at *6 (W.D. Pa. Feb. 5, 2020) (noting that negligent supervision claims "arising out of employment discrimination cases in Pennsylvania must be brought under the PHRA").  Accordingly, the Court will grant Defendants' motion to dismiss Plaintiff's negligent supervision claim.[9]

### 4.    Assault/Battery Claims Against Althom & Moul: Respondeat Superior Theory of Liability (Count IX)

Count IX of Plaintiff's complaint asserts assault and battery claims against Althom and

---

[9]  By choosing "to pursue a remedial action under the PHRA," rather than under the "laws of the Commonwealth," Plaintiff became "bound exclusively to the PHRA's procedures, including the exhaustion of administrative remedies, and bound to the result[.]"  See Harrison v. Health Network Lab'ys Ltd. Partnerships, 232 A.3d 674, 683 (Pa. 2020).  Under this rule, even an unexhausted PHRA claim subject to dismissal can preempt a state law claim that is based on the same facts.  Accordingly, the fact that Plaintiff failed to exhaust her PHRA claims, which the Court must therefore dismiss, see infra, does not render PHRA preemption inapplicable to her negligent supervision claim.  See id.; cf. Ellis v. Mohenis Servs., Inc., No. 96-cv-06307, 1997 WL 364468, at *2 (E.D. Pa. June 18, 1997) (concluding that the plaintiff did not invoke the PHRA, where plaintiff's "attorney promptly sent a letter requesting that the PHRC not go forward with its investigation," and was therefore not precluded from bringing common law claims stemming from the same allegations).

Moul.  (Doc. No. 1 ¶¶ 89-92.)  An "assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person."  See Boyden v. Twp. of Upper Darby, 5 F. Supp. 3d 731, 744 (E.D. Pa. 2014).  Defendants challenge Count IX on one ground, arguing that Plaintiff has failed to plausibly allege that Clark—even assuming, as Plaintiff alleges, that he assaulted/battered her—did so within the scope of his employment with Althom. (Doc. No. 20 at 15.)  Defendants assert that Clark's alleged conduct fell outside of the scope of his employment, while Plaintiff argues to the contrary, noting that under Pennsylvania law, "[i]n certain circumstances, liability of the employer may also extend to intentional or criminal acts committed by the employee."  See Costa v. Roxborough Mem'l Hosp., 708 A.2d 490, 493 (Pa. Super. 1998).

The contours of the respondeat superior doctrine, under which an employer may be held vicariously liable for an employee's conduct, are as follows:

> A master is liable for the acts of his servant [that] are committed during the course of and within the scope of the servant's employment. Restatement (Second) of Agency § 219.  This liability of the employer may extend even to intentional or criminal acts committed by the servant.  Restatement (Second) of Agency § 231. Whether a person acted within the scope of employment is ordinarily a question for the jury.  Where, however, the employee commits an act encompassing the use of force which is excessive and so dangerous as to be totally without responsibility or reason, the employer is not responsible as a matter of law.  If an assault is committed for personal reasons or in an outrageous manner, it is not actuated by an intent of performing the business of the employer and is not done within the scope of employment.
>
> The Restatement (Second) of Agency § 228 defines conduct within the scope of employment as follows: (1) Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master[;] and (d) if force is intentionally used by the servant against another, the use of the force is not unexpectable by the master. (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too

little actuated by a purpose to serve the master.

See Spitsin v. WGM Transp., Inc., 97 A.3d 774, 776 (Pa. 2014) (alterations in original) (emphasis added) (internal quotation marks omitted) (quoting Restatement (Second) of Agency §§ 219, 228).

      Applying these principles here, the Court concludes that Plaintiff has failed to plausibly allege that Clark assaulted/battered her within the scope of his employment with Althom. Plaintiff has failed to plausibly allege that Clark's conduct in touching her genitals, asking her to "do [him]," and texting her a picture of his penis "is of the kind [of work that Clark] [wa]s employed to perform."  See Restatement (Second) of Agency § 228.  For this reason alone, Plaintiff's assault/battery claims fail.  Following the Restatement (Second) of Agency, courts in Pennsylvania "have held that an assault committed by an employee upon another for personal reasons or in an outrageous manner is not actuated by an intent to perform the business of the employer and, as such, is not within the scope of employment."  See Costa, 708 A.2d at 493. Courts in this district, applying Pennsylvania law, have held similarly.  See Sincavage v. Schott N. Am., No. 3:18-cv-01231, 2018 WL 4852218, at *2 (M.D. Pa. Oct. 5, 2018) (dismissing vicarious liability claim against employer where claim was based on an employee's alleged assault, including the grabbing of plaintiff's "inner thigh and genitals").

      Plaintiff nonetheless asserts that "Clark was engaged in the type of actions he was expected to take by Defendant" because: (1) he allegedly "touched Plaintiff's genitals simultaneously with giving her direction as her supervisor"; (2) physical contact "between employees is to be expected and may be required in an automobile detailing shop where workers are engaged in physical tasks in close proximity to each other"; (3) based on Plaintiff's allegation that Clark "directed [her] to detail a vehicle and then to 'do him,'" just before assaulting her, "a

jury could conclude . . . that Clark was acting at least in part to assert his supervisory power over Plaintiff so that Plaintiff would respond to his commands and work harder and faster to complete work for Defendants"; and (4) "Defendants evidently had no effective policies prohibiting unwelcome sexual contact, and did not investigate or discipline Plaintiff's assailant for assaulting and harassing Plaintiff," such that "the use of force of this kind would not have been unexpected by the employer."  (Id.)

These allegations, insofar as Plaintiff asserts that they establish that Clark's alleged assault/battery of her occurred within the scope of his employment, "fail[] to 'nudg[e] [her] claims across the line from conceivable to plausible.'"  See Robinson v. Fam. Dollar Inc, 679 F. App'x 126, 133 (3d Cir. 2017) (unpublished) (alteration in original) (quoting Twombly, 550 U.S. at 570) (affirming dismissal of vicarious-liability-based assault claim against employer where the complaint "merely offer[ed] conclusory assertions that the employees assaulted [one plaintiff] 'for the purpose of serving Family Dollar,' and that '[m]onitoring for theft [wa]s within the scope of the defendants' employment'"); see also Sincavage, 2018 WL 4852218, at *6 (rejecting vicarious liability claim where the plaintiffs argued that the employer "fail[ed] to prevent [employee]'s sexual assaults").  Indeed, the facts of the complaint—e.g., Clark stating "do me" to Plaintiff and texting a "picture of his penis with the words, '[d]o you want it'"—suggest not that he undertook his conduct in service of Althom but rather that his conduct was motivated by personal reasons unrelated to his employment.  See Fuhrman v. Quill Corp., No. 1:09-cv-00841, 2010 WL 411698, at *7 (M.D. Pa. Jan. 27, 2010) (dismissing assault claim based on conduct that "occurred within the authorized time and space limits of the . . . employment," finding it "difficult to see how [the conduct] was motivated by a desire to serve [the employer] or was the type of conduct for which the employees were hired").  For all these reasons, Plaintiff's well-

pleaded allegations do not support her claim that Clark allegedly assaulted her <u>within the scope of his employment</u>.  The Court will therefore grant Defendants' motion to dismiss Count VIII of Plaintiff's complaint.

### 5.    PHRA Claims Against All Defendants (Counts XI-XIV)

Finally, as to Plaintiff's PHRA claims, the Court agrees with Defendants (Doc. No. 27) that Plaintiff failed timely to exhaust those claims.  To do so, Plaintiff was required to file a charge with the PHRC—or with the EEOC, dual-filed with the PHRA—within one hundred eighty (180) days of the allegedly discriminatory conduct.  <u>See</u> 43 P.S. § 959(h); <u>Mandel</u>, 706 F.3d at 165 (applying PHRA's 180-day filing requirement despite 300-day filing requirement that applies to EEOC charges in Pennsylvania).  Plaintiff alleges claims stemming from wrongful conduct that occurred no later than August 2019, but she did not file an EEOC charge until well over two hundred (200) days later, in March 2020.  (Doc. Nos. 1 ¶¶ 17-43, 24-2 at 45-46.) Because Plaintiff failed to exhaust her PHRA claims, the Court will grant Defendant's motion to dismiss those claims (Counts XI-XIV).

### C.    Leave to Amend

The Third Circuit has "instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile."  <u>See</u> <u>Phillips</u>, 515 F.3d at 236 (citing <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002)).  "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."  <u>Alvin v. Suzuki</u>, 227 F.3d 107, 121 (3d Cir. 2000) (citing <u>Smith v. NCAA</u>, 139 F.3d 180, 190 (3d Cir. 1998), <u>rev'd on other grounds</u>, 525 U.S. 459 (1999)).  As her complaint currently stands, Plaintiff has failed to plausibly allege her IIED (Counts VI-VII) and assault/battery claims

(Count IX).  Further, the PHRA preempts her negligent supervision claim (Count VIII), and she failed to timely exhaust her PHRA claims (Counts XI-XIV).  Plaintiff has not pointed to any particular facts that she could include in an amended pleading that would establish <u>prima</u> <u>facie</u> IIED and assault/battery claims, and her negligent supervision and PHRA claims are invariably barred pursuant to the PHRA's procedural requirements.  Accordingly, permitting amendment at this time would be futile.

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant in part Defendants' motion to dismiss (Doc. No. 15) to the extent of dismissing Counts VI and VII (IIED claims), VIII (negligent supervision claim), IX (assault and battery claims), and XI through XIV (PHRA claims) and will deny Defendants' motion in all other respects.  The claims that remain are as follows: Plaintiff's federal claims under Title VII and the ADA (Counts I-V) and her state law claim for negligent infliction of emotional distress (of which Defendants do not seek dismissal).  An appropriate Order follows.